UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| BRIAN J. M., an Individual, | Case No.: 2:18-05955 ADS |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL[1], Commissioner of Social Security, | |
| Defendant. | |

## I. **INTRODUCTION**

Plaintiff Brian J. M.[2] ("Plaintiff") challenges the Defendant Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for supplemental security income ("SSI"). Plaintiff contends that the Administrative

---

[1] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).
[2] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Law Judge ("ALJ") improperly evaluated his subjective statements, as well as a medical opinion. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.[3]

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his application for social security benefits, Plaintiff last worked on November 12, 2014, his alleged disability onset date. (Administrative Record "AR" 138, 172). He alleged disability based on "chf" – congestive heart failure. (AR 162).

Plaintiff testified that he had triple-bypass heart surgery in 2007. (AR 38, 53). Plaintiff stated he had this procedure done three times because two failed. (AR 38, 48). Plaintiff spent some time in prison, and after he was released, he worked for two telemarketing companies in 2014. (AR 35-36).

In November 2014, Plaintiff noticed he was growing very tired and weak, and couldn't finish the workday. (AR 37-38). Plaintiff stated that he therefore quit his job. (AR 37). Plaintiff then he had a heart attack in December 2014, was hospitalized for three or four days and had a stent placed in his heart. (AR 37-38, 53). In 2016, Plaintiff had an angioplasty done. (AR 39).

In addition to his heart condition, Plaintiff testified that he has "frozen shoulder" from diabetes. (AR 39, 44-45). Plaintiff also stated he has Meniere's disease from a recurring inner ear infection, and arthritis in his knees. (AR 49-50, 52).

---

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Docket("Dkt.") Nos. 12, 14].

Plaintiff hasn't worked since he left his employer in November 2014, except doing odd jobs here and there. (AR 38). Plaintiff testified that he can't go back to telemarketing because of "simple fatigue" caused by a combination of his medication, heart disease, and sleep apnea. (AR 40, 50). Plaintiff stated he is unable to complete an eight-hour shift because, after a couple of hours, he's "just done." (AR 40, 43).

Plaintiff testified he can stand for five or 10 minutes, and walk two or three blocks, before needing to sit. (AR 50-51). He spends most of his time sitting, and he can do that for "long periods of time." (AR 51). Plaintiff stated he can lift 20 or 30 pounds and that he can walk maybe two flights of stairs before his chest tightens. (AR 41-42, 51). Plaintiff can bend over, but not too much otherwise he becomes dizzy. (AR 51). Plaintiff also stated he can stoop, but it is a problem because of the arthritis in his knees. (AR 52).

As part of his daily activities, Plaintiff can dress and bathe himself, prepare his own meals, and get around using mass transit. (AR 34). Plaintiff stated he walks through his neighborhood and picks up cans and bottles for income. (AR 52). Plaintiff is a recovering alcoholic, so he does a lot of work for Alcoholics Anonymous, including counsels, speaks, sponsors, and takes part in recovery meetings. (AR 45-46). According to Plaintiff, there is "no question" that his drinking "probably was a big contributing factor" in the early onset of his congestive heart disease. (AR 47).

Plaintiff testified that, currently, his doctor advises him to stay on his medication and exercise as much as he can and stated that his doctor is happy with where he's at right now. (AR 40).

On December 7, 2015, Plaintiff's treating physician, Imanuel Khalili, M.D., completed a three-page "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED

ACTIVITIES (PHYSICAL)" form provided by the law firm representing Plaintiff. (AR 327-29). On the form, Dr. Khalili checked boxes indicating Plaintiff was extremely limited, including that he could lift a maximum of 10 pounds occasionally, and less than 10 pounds frequently. (AR 327). Additionally, Plaintiff could stand and walk less than two hours, and sit about four hours, in an eight-hour workday. (Id.). Plaintiff would also need to change position after sitting for 90 minutes or standing for 10 minutes. (Id.). The doctor indicated that Plaintiff must never stoop, bend, or climb ladders, and that he can only occasionally crouch or climb stairs. (AR 328). Additionally, Plaintiff has limitations handling, pushing, and pulling. (Id.). Plaintiff must avoid temperature extremes, respiratory irritants, hazards, and concentrated exposure to wetness and humidity. (AR 329). The doctor further explained that Plaintiff's "[h]eart condition prohibits physical exertion on any type [of physical function]," and "causes an inability to engage in activities for sustained periods." (AR 328-29). Dr. Khalili opined that Plaintiff would need to be absent from work more than three times a month. (AR 329).

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff filed his application for SSI on November 12, 2014, alleging disability beginning that day. (AR 13, 71, 138). Plaintiff's claim was denied initially on May 28, 2015. (AR 71). A hearing was held before ALJ Richard T. Breen on February 14, 2017. (AR 26-60). Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert, June Hagen. (Id.)

On June 16, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[4] (AR 13-21). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on May 22, 2018. (AR 1-6). Plaintiff then filed this action in District Court on July 9, 2018, challenging the ALJ's decision. [Dkt. No. 1].

**B. Summary of ALJ Decision After Hearing**

In the decision (AR 13-21), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 416.920(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since November 12, 2014, the alleged onset and application filing date. (AR 15). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) coronary artery disease, status-post triple bypass grafting in 2007, and multiple angioplasties with stent placements; (b) hypertension; (c) asthma; (d) obesity; and (e) right shoulder capsulitis. (AR 15-16).

---

[4] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925[,] and 416.926)." (AR 16). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] "to perform sedentary work as defined in 20 CFR 416.967(a)[7] except:

> lifting up to 5 pounds frequently and up to 10 pounds occasionally, sitting up to 6 hours total in an 8-hour workday, and standing/walking up to 2 hours total in an 8-hour workday, with the following restrictions: he can only occasionally operate hand controls with his bilateral hands; he can only occasionally use his bilateral upper extremities for reaching; he must avoid concentrated exposure to moving mechanical parts; [and] he must avoid concentrated exposure to respiratory irritants and temperature extremes.

(AR 16).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff could perform his past relevant work as a telephone solicitor and the "composite job" of telephone solicitor/appointment clerk. (AR 20). The ALJ noted that "[t]his work does not require the performance of work-related activities

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[7] "Sedentary work" is defined as
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); see also Casey H. v. Berryhill, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

precluded by [Plaintiff]'s [RFC] . . ." (Id.) The ALJ did not proceed to **step five**. (Id.). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since the application was filed on November 12, 2014. (Id.).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review, whether the ALJ properly: (1) evaluated his subjective testimony and complaints; and (2) analyzed the medical opinion of a treating physician. [Dkt. No. 22 (Joint Stipulation), 2][8]. Specifically, Plaintiff contends ALJ improperly discounted his statements regarding the nature and severity of his conditions. [Id., pp. 9-12, 17]. In addition, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of his primary care provider, Dr. Imanuel Khalili. [Id., pp. 3-5, 9].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were

---

[8] The Court addresses the claims in a different order than presented by the parties to track the ALJ's decision and provide background and context to Plaintiff's claim of disability.

applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. **Whether the ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ improperly rejected his subjective testimony by relying solely on its inconsistency with the objective evidence. Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record and Plaintiff's prior statements about his improved condition.

#### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest that Plaintiff carried his burden of producing objective medical evidence of his impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. [Dkt. No. 22, pp. 13-14].

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by

providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2001) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).

2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific clear and convincing reasons for discounting Plaintiff's subjective complaints.[9] The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the medical evidence and other evidence in the record, and Plaintiff's prior statements admitting improvement. (AR 17-19). The ALJ properly relied on those factors for the following reasons.

---

[9] The ALJ did not make a finding of malingering in his opinion. (AR 13-21). Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons. See Benton, 331 F.3d at 1040; Brown-Hunter, 806 F.3d at 489.

First, although a lack of, or inconsistency with, objective medical evidence cannot be the sole reason for discounting a claimant's testimony, it can be one of several factors used in evaluating subjective complaints. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The objective medical evidence of record included the following: (1) while Plaintiff underwent a coronary artery stenting procedure in December 2014, his January and September 2015 echocardiogram showed that his left ventricular ejection fraction was within normal range and without segmental wall motion abnormalities (AR 848); (2) while Plaintiff developed chest pain during his January 2016 exercise nuclear stress test, the pain resolved with rest and the nuclear images were negative for ischemia and his left ventricular ejection fraction was 48% (AR 848); (3) Plaintiff's April 2015 consultative examination "did not demonstrate any clinical abnormalities" (AR 18), including that (a) Plaintiff's chest showed "no evidence of tenderness" or "kyphosis" (AR 320); (b) he used "no accessory muscles" while breathing and had "normal inspiration, expiration and excursion" (AR 320); (c) his lungs had "bilaterally symmetric breath sounds, clear to auscultation and percussion" (AR 320); (d) there was no evidence of "wheezing, rhonchi or rales"; (e) the expiratory phase was within normal limits (AR 321); (f) Plaintiff's cardiovascular system showed "no evidence of heaves or thrills"; (g) there was "no evidence of murmurs, rubs, gallops or thrills"; and (h) he had "regular rate and rhythm with normal S1 and S2" (AR 321); (i) although Plaintiff also alleged he was unable to work because of "frozen shoulder," examination of his shoulders was normal (AR 321); and (4) Plaintiff's physical examinations in 2015 and 2016 revealed a normal cardiovascular system,

pulmonary/chest examination, and musculoskeletal system (AR 797, 800, 803, 807, 810, 814, 819, 822, 826, 828, 833, 837, 844).

Second, the ALJ detailed a litany of statements Plaintiff made to medical professionals indicating improvement of his condition. (AR 18). Plaintiff fails to acknowledge this part of the ALJ's decision or refute any of the statements he made. [Dkt. No. 22 (Joint Stipulation), 9-12, 17]. Accordingly, Plaintiff has not properly challenged the ALJ's determination before the Court. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons in credibility determination waived any challenge to those aspects of ALJ's finding); [Dkt. No. 11, p. 5 ("Any issue not raised in the joint submission may be deemed waived.")].

Even if the Court were not to find waiver, the ALJ's reasoning is amply supported by the record. For example: (1) in September 2015 Plaintiff reported to his cardiologist that his chest pain had resolved, he was physically active, and he was walking daily (AR 18, 776); (2) in December 2015, Plaintiff reported "feel[ing] good with no new complaints" to his treating physician, Dr. Khalili (AR 821); (3) in January 2016, Plaintiff again reported "feel[ing] good" and denied "chest pain, SOB [shortness of breath] and palpitation" (AR 818); (4) in April 2016, Plaintiff reported "his exercise tolerance much improved after angio and can walk 8 blocks with no chest pain or SOB" (AR 18, 806); (5) Plaintiff continued to report feeling "good" to Dr. Khalili in June, July, August, and October of 2016 (AR 794, 796, 799, 802); (6) in July 2016, Plaintiff told Dr. Khalili that he felt "very good with no complaints, and he had "never been so good before" (AR 18, 799); (7) in January 2017 Plaintiff denied chest pain, had no shortness of breath, and

"exercises without any distress" (AR 787). Indeed, even at the February 2017 hearing, Plaintiff admitted that his current doctor advises him to exercise as much he can, and that he is "happy" with where Plaintiff is at right now. (AR 40). The ALJ thus properly relied on this reason in assessing Plaintiff's subjective complains. See Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled); Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's credibility based on her own admissions and inconsistency between her testimony and descriptions of her activities and abilities).

Based on these clear, convincing and specific reasons for discounting Plaintiff's subjective complaints and the substantial evidence to support his determination, the Court concludes that the ALJ did not commit error in assessing Plaintiff's testimony.

### D. **Whether The ALJ Properly Evaluated A Treating Physician Opinion**

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Kahlili, and more weight should have been assigned to it because he was a treating physician. Defendant contends that the ALJ properly assessed the opinion.

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F. R. § 416.927(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216). In Trevizo, the Ninth Circuit addressed the factors to be considered in assessing a treating physician's opinion.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Id. § 404.1527(c)(2)-(6)."

871 F.3d at 675.

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

2. <u>The ALJ Gave Specific and Legitimate Reasons, Supported by Substantial Evidence, for Assigning Less Weight to the Treating Physician Opinion</u>

Preliminarily, the Court notes the ALJ did not reject Dr. Khalili's opinion in its entirety. The ALJ declined to give it controlling weight and instead assigned "little" weight. (AR 19). By providing a detailed summary of the opinion and assigning "little" weight, the ALJ necessarily gave consideration and credited aspects of that opinion. (AR 19). Indeed, the ALJ limited Plaintiff's RFC to sedentary work, restricted his handling and reaching, and precluded him from concentrated exposure to respiratory irritants and temperature extremes, which at least partially reflected portions of the treating opinion. (AR 16).

To the extent the ALJ did not fully adopt the limitations in the opinion, he complied with <u>Magallanes</u> and provided specific and legitimate reasons for doing so that are supported by the record.

First, the ALJ mentioned that Dr. Khalili's progress notes offered little, if any, clinical signs that would support the extreme limitations he assessed. (AR 19). This reason is supported by the record. For example, Dr. Khalili's progress notes regularly showed normal cardiovascular examination findings, such as normal heart rate, regular rhythm, and normal heart sounds. (AR 797, 800, 803, 807, 810, 814, 819, 822, 826, 828, 833, 837, 844). Further, pulmonary and chest examinations were similarly normal, revealing normal breath sounds, no respiratory distress, no wheezes, and no tenderness. (<u>Id.</u>) Moreover, as Defendant points out, the progress note Dr. Khalili completed on December 7, 2015—the same day he indicated he "signed for [Plaintiff]" his "paper for disability" (AR 824)—shows that Plaintiff reported "feel[ing] good with no new complaints." [Dkt. No. 22, p. 7]; (AR 821). Plaintiff's physical examination that day

also showed normal physical and mental findings. (AR 822). Further, as discussed above, Plaintiff made several comments to Dr. Khalili during other visits about his improved condition. The ALJ properly relied on the lack of support for Dr. Khalili's opinion in his own progress notes. See Wilhelm v. Comm'r Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) (ALJ properly rejected doctor's opinion because it contradicted her own treatment notes); Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)).

Second, and relatedly, the ALJ found that the basis for Dr. Khalili's opinion was unclear. (AR 19). The form opinion completed by Dr. Khalili requested, for each activity assessed, the doctor to "[i]dentify the particular medical findings (e.g., physical examination findings, x-ray findings, laboratory test results, history, symptoms (including pain), etc.) which support your opinion regarding limitations." (AR 327). Yet, in the blanks on the form, Dr. Khalili simply listed his diagnosis of coronary artery disease and osteoarthritis, and Plaintiff's subjective complaints, which the ALJ discounted as previously explained. (AR 328-29). No other medical "findings" were identified in the form opinion, even though they were requested. As such, in deciding to assign Dr. Khalili's opinion less weight, the ALJ properly relied on the lack of a clear basis for the opinion. See, e.g., Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Morgan, 169 F.3d at 602 (disability opinion "premised to a large extent

upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" (quotations omitted)).

Accordingly, the Court concludes that the ALJ provided "specific and legitimate" reasons based on substantial evidence for him assigning little weight to Plaintiff's treating physician's opinion.

**V. <u>CONCLUSION</u>**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.

DATE: March 18, 2020

<u>    /s/ Autumn D. Spaeth    </u><br>
THE HONORABLE AUTUMN D. SPAETH<br>
United States Magistrate Judge